## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| E3 BIOFUELS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:11CV44 |
| | ) | |
| V. | ) | |
| | ) | |
| BIOTHANE, LLC, successor in | ) | ORDER |
| interest and liability to, and | ) | |
| PERENNIAL ENERGY, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Perennial, Energy, Inc. ("PEI") has filed a motion requesting that the Court compel Plaintiff to supplement its responses to PEI's discovery requests. (Filing 123.) For the reasons set forth below, PEI's motion will be granted, in part.

## BACKGROUND

This lawsuit arises out of the construction of an ethanol plant (the "Ethanol Plant" or "Plant") in Mead, Nebraska. Plaintiff alleges that Defendants failed to provide a functional Boiler System for the Plant. Specifically, the Complaint alleges that the "construction, installation, testing, commissioning and start up of the Ethanol Plant was not substantially completed, and the Ethanol Plant never operated as intended, due to the failure of the Defendants to fabricate, install, integrate, program, test, commission, and start up a fully functional Boiler System for the Ethanol Plant. As a direct and proximate result, [Plaintiff] sought bankruptcy protection." (Filing 60 at CM/ECF p. 4.) PEI denies Plaintiff's allegations and, in its Answer, affirmatively alleges that Plaintiff's damages were caused by Plaintiff's own negligence and/or acts or omissions of third parties. (Filing 71.) PEI also claims that Plaintiff has not been damaged to the extent alleged and failed to mitigate its damages. (*Id.*)

On August 26, 2011, PEI served interrogatories and requests for production of

documents upon Plaintiff. Plaintiff submitted its responses on September 26, 2011. PEI believes that Plaintiff's responses contain improper objections and are incomplete. PEI has moved the Court for an order overruling Plaintiff's objections to (1) the definitions contained in the discovery requests; (2) Interrogatory Nos. 3-6, 11-21, 23-25, 29-35, 37-40, 42 and 44-47; and (3) Document Production Request Nos. 2, 6, 9-20, 23-26, 28-32, 38-42, 44-52, 54-59, 61 and 62. PEI also requests that the Court find that Plaintiff violated the Federal Rules of Civil Procedure by issuing incomplete or evasive responses to Interrogatory Nos. 1-6, 8-11, 13, 16-20, 22-27, 29, 31-33, 36 and 43, as well as Document Production Request Nos. 1, 2, 4-36, 38-43, 45-50, 53-57, 59, 61 and 63. PEI requests that the Court order Plaintiff to supplement its responses so as to ensure that Plaintiff's responses are complete.[1]

## ANALYSIS

Under the federal rules, parties to a lawsuit may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Relevancy is broadly construed, and "[d]iscovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action." Met-Pro Corp. v. Industrial Air Technology, Corp., No. 8:07CV262, 2009 WL 553017, * 3 (D. Neb. March 4, 2009). The party seeking discovery must make a threshold showing that the requested information or documents are relevant to the plaintiff's claims or defenses. Id. "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id.

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of

---

[1] Plaintiff has agreed to supplement its responses to Interrogatory Nos. 26, 27, 34 and 35. Plaintiff shall do so, in conformance with this Order, within 45 days. Plaintiff represents that it has fully responded to Interrogatory No. 19. Therefore, Interrogatory Nos. 19, 26, 27, 34 and 35 will not be specifically discussed herein.

producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991). Therefore, the party opposing the motion to compel has the "burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper." *Whittington v. Legent Clearing, LLC*, No. 8:10CV465, 2011 WL 6122566 , * 3 (D. Neb. Dec. 8, 2011). The party resisting discovery must "show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome." *Id.* However, "[t]he court has discretion to limit the scope of discovery if it has a good reason to do so." *Met-Pro Corp.*, 2009 WL 553017 at * 3.

## A.   Objections to Definitions in the Discovery Requests

Plaintiff objected to several of the definitions set forth in PEI's discovery requests, asserting that the definitions were overly broad.  Particularly, Plaintiff objected to PEI's definition of the term "Project," which PEI defined as meaning "the construction and management of a 'closed loop' ethanol plant." (Filing 125-1.)  Plaintiff further objected to PEI's definition of the term "Plant Subparts," which PEI defined as including:

> Boiler 601, Boiler 602, the burners for said boilers, the exhaust stack for said boilers, the de-aeration system for said boilers, the air compressor system for said boilers, the natural gas line and regulators for said boilers, the bio gas line and regulators for said boilers, the steam distribution system for the Plant, the steam/condensate return system for the Plant, the feedwater system in the boiler building, the reverse osmosis (RO) system in the boiler building, the sump pump system in the boiler building, the ventilation system in the boiler building, and the boiler building.

(*Id.*)  Plaintiff's response to PEI's discovery requests limited the definition of "Project" to include the installation and start up of the Boiler System and "any related systems." (Filing 125-2.)  Similarly, Plaintiff limited the term "Plant Subparts" to include only the Boiler System and any related systems. (*Id.*)  Plaintiff did not, however, indicate what was included within its meaning of "related systems."

3

PEI asserts that its definitions narrowly tailored the scope of its discovery requests to seek information regarding the problems that were reportedly occurring over the course of construction of the Ethanol Plant. PEI claims that this information is relevant because the Complaint alleges that the entire Plant was not substantially completed and that the entire Plant did not function as intended because of the Boiler System. PEI further believes that this information is critical to its defense that other problems at the Plant affected its completion and had nothing to do with the boilers. PEI claims that the limitations imposed by Plaintiff impacted the sufficiency of Plaintiff's responses to Interrogatory Nos. 3, 5, 6, 11, 12-14, 16, 17, 20, 21, 23, 32-35, 38 and 46, as well as Document Production Request Nos. 2, 6, 13-17, 23-26, 28-32, 38-40, 44, 45, 59 and 62.

The Court agrees that discovery related to other construction problems allegedly occurring at the Ethanol Plant is relevant to the issues involved in this case. Plaintiff's Complaint alleges that the Ethanol Plant was not substantially completed, and the Ethanol Plant never operated as intended, due to PEI's failure to provide a fully functional Boiler System. PEI denies these allegations and asserts that the damages were caused by Plaintiff's own negligence and/or acts of third parties. Therefore, discovery requests seeking to determine to what extent, if any, other problems caused the alleged failures or completion delays are clearly relevant to the claims and defenses in this case. However, upon review of the discovery requests, it is apparent that several of PEI's requests are overly broad, regardless of the definitions used. Several of the requests encompass irrelevant information and are nearly impossible to fully answer.

Therefore, keeping in mind the foregoing, the Court orders as follows:

1. Plaintiff is directed to supplement its responses to Interrogatory Nos. 11, 12, 13, 14, 16, 17, 20, 21, 23, 32[2], 33 and 38, so as to include within the definition of the term "Project" the construction and management of the Solid Waste Management System and Ethanol Production Facility located near Mead,

_____

[2] In supplementing Interrogatory No. 32, Plaintiff need not provide salary information or the amount of wages paid to each of its employees.

Nebraska.  This definition is not limited to information about the Boiler System or other "related systems."  However, Plaintiff need not include information regarding the dairy feedlot, with the exception of information regarding the feedlot's boilers.  Plaintiff also need not provide information about the Plant's ammonia production as this area of inquiry appears, at least at this time, to be irrelevant to the issues involved in this case. Also, these interrogatories must be supplemented to employ the definition of the term "Plant Subparts" provided by PEI.  If, in response to these interrogatories, Plaintiff has already provided the information in its possession or control included within these parameters, Plaintiff shall so notify PEI.

2.    The Court finds that Interrogatory Nos. 5 and 6 are exceedingly broad and that Plaintiff's answers are sufficient.  A response to Interrogatory No. 5, which asks for a list of all issues, problems or defects that delayed construction of the Plant, would include information about minor delays in the project, such as an electrician being late for work, or other insignificant delays which have no relevance to the issues involved in this case.  Interrogatory No. 6 asks for a list of any and all work that Plaintiff was responsible for completing or decisions Plaintiff was responsible for making with respect to the construction and management of the Plant.   The construction of the Plant was a huge undertaking.  It would be nearly impossible for Plaintiff to make a list of every decision or act, however minor, that it was responsible for making or completing.

3.    Plaintiff shall supplement its responses to Document Production Request Nos. 2, 6, 13-17, 23-26, 28-32, 39, 40, 44, 45 and 59, so as to comply with the parameters set forth above.   Should Plaintiff's responses not require supplementation because all responsive documents (as defined by this Order) have previously been provided, it shall so notify PEI.

5

B.      **Post-Bankruptcy Discovery**

PEI has asked a host of discovery requests that seek information and materials that post-date the bankruptcy of the former Plant owners.  Particularly, this information is sought through Interrogatory Nos. 12-19, 21, 32, 34-35, 37-40, 42 and 46, as well as Document Production Request Nos. 15, 19, 20, 25, 26, 29, 30, 32, 41, 42, 45, 47-50, 54-57 and 61. It appears that Plaintiff has provided some, but not all, responsive information which post-dates the bankruptcy.

PEI believes that post-bankruptcy discovery is likely to reveal information about other design or construction problems that prevented the Ethanol Plant or its Boiler System from operating as intended.  PEI contends that post-bankruptcy discovery could also reveal information about other factors that prevented the Ethanol Plant from legally operating, such as the Plant's alleged violation of environmental standards.  As explained above, the Court believes that discovery seeking information about other problems that prevented the operation of the Ethanol Plant is relevant, given the allegations and defenses in this suit. Therefore, post-bankruptcy discovery will be permitted.

Accordingly, the Court orders as follows:

1.      To the extent it has not done so, Plaintiff shall produce post-bankruptcy information in response to Interrogatory Nos. 12-19, 21, 32, 37, 38 and 40.

2.      Plaintiff is also directed to supplement its responses to Document Production Request Nos. 15, 19, 20, 25, 26, 29, 30, 32, 41, 42, 45, 47-50, 54-57 and 61 to provide documents post-dating bankruptcy.

3.      If Plaintiff does not possess the information sought by any of these discovery requests, it shall so notify PEI in its responses.

6

C.      **Information About Criminal/Civil Lawsuits**

Plaintiff objected to Interrogatory Nos. 2 and 3, as well as Document Production Request Nos. 44 and 59, on the ground that these discovery requests seek irrelevant information pertaining to criminal and/or civil lawsuits. PEI asserts that this information is relevant, as it is likely to lead to information about designed and/or installed equipment, beyond the Boiler System, that prevented the Plant and/or boilers from operating as intended. Further, PEI contends that Plaintiff's payment or receipt of monetary judgments or settlements is information which could be useful in evaluating whether Plaintiff would have gone bankrupt because of other issues with the Plant.

Interrogatory No. 2 asks for information pertaining to all criminal or civil lawsuits in which Dennis Langley and/or John Curran, the individuals assisting Plaintiff in responding to the discovery requests, were parties. Plaintiff objected to this interrogatory as being overly broad because, as it is worded, it would require these individuals, who are not parties to this proceeding, to list every traffic violation they have ever incurred or to identify any domestic proceedings in which they may have been parties. The Court agrees that this interrogatory seeks irrelevant information and is overly broad. Plaintiff responded to the interrogatory by stating that neither Langley nor Curran have been convicted of a felony. This response is sufficient.

Interrogatory No. 3 asks Plaintiff to identify all civil lawsuits in which Plaintiff has been a party within the past ten years. Plaintiff objected, arguing that the scope of this interrogatory should be limited to lawsuits pertaining to the Ethanol Plant. The Court finds that the information requested through this interrogatory is discoverable. As pointed out by PEI, information regarding other lawsuits could shed light on Plaintiff's financial condition, which, given Plaintiff's allegation that the failure of the Boiler System caused it to go into bankruptcy, is relevant to this action. Plaintiff is ordered to supplement its answer to this interrogatory accordingly, taking care to supply the information requested by each of the interrogatory's sub-parts.

Document Production Request No. 44 seeks all settlement agreements pertaining to

the payment of damages sustained during the planning and construction phases of the Ethanol Plant. Plaintiff has agreed to produce all settlement agreements, subject to any confidentiality orders, to the extent the Court believes that PEI is entitled to a credit or a setoff in this case. Similarly, Request No. 59 asks for copies of all judgments entered for or against Plaintiff from the beginning of the construction of the Ethanol Plant to the current date. Plaintiff has agreed to produce all judgments pertinent to the damages in this case. The Court finds that these requests are reasonably calculated to lead to the discovery of admissible evidence. As argued by PEI, it is possible that this discovery will lead to information about defectively designed or installed equipment that may have caused Plaintiff's alleged damages. Plaintiff shall supplement its responses to these requests so as to ensure that all responsive documents have been provided.

### D.    Information About Other Incidents or Occurrences

Interrogatory No. 33 seeks information regarding all occurrences, other than the boiler explosion involved in this suit, that caused personal injuries, property damage or financial losses at the Plant. Similarly, Document Production Request No. 45 seeks all documentation created within the past ten years concerning any other incidents that occurred at the Plant and resulted in personal injuries, damage to property, or any other losses to the Plant. Plaintiff objected to these requests, claiming that they are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff argues that these discovery requests would require, for instance, information about claims asserted by an employee of a contractor that suffered a work-related injury.

PEI asserts that through these requests, it is seeking information regarding things such as repairs needed at the Plant, both before and after it filed for bankruptcy, and expenses, if any, Plaintiff incurred in making those repairs. PEI also claims it is seeking information to aid PEI in evaluating the physical condition of the Plant. PEI concedes that it does not want Plaintiff to contact every contractor involved in the construction of the Plant to obtain information about personal injuries sustained by the contractor's employees. Rather, PEI only wants Plaintiff to provide the responsive information it possesses. Plaintiff has not shown that it would be unduly burdensome to respond to these requests. Accordingly, Plaintiff shall supplement its responses to provide the information sought.

### E.   Information About Plaintiff's Corporate Structure

Interrogatory Nos. 39 through 42 request information about Plaintiff's corporate structure, employees and shareholders. Likewise, Document Production Request Nos. 51 and 52 seek information regarding the corporate structure of Plaintiff and the subsequent purchaser of the Ethanol Plant, AltEn, LLC. PEI claims that these discovery requests are designed to obtain information about individuals having knowledge of issues in this case, such as the steps taken by Plaintiff to mitigate its damages and the amount of money needed to re-start the Plant.

Interrogatory No. 39 requests that Plaintiff state the name and address of every entity that "You" have an interest in, the amount of that interest, the name and title of every officer for that entity and the name of every member of that entity's board of directors. In response, Plaintiff objected, contending that the request was overly broad and unduly burdensome. Notwithstanding its objection, Plaintiff advised PEI that: (1) it owns 30% of the stock of AltEn, LLC, the current owner of the Plant; (2) the managers of AltEn, LLC are Dennis Langley, Scott Asner and Phillip Rouse; and (3) AltEn, LLC does not have a board of directors. Interrogatory No. 40 asks whether certain named individuals have ever been employed by "You," and requests the individuals' dates of employment, their titles while working for "You," each individuals' email address, the amount of interest held by the individuals in any of "Your" companies and the amount of any ownership interest that they have in any of the entities that now have an ownership interest in the Plant. Plaintiff answered by stating that the named individuals were employees of Plaintiff or related companies prior to the bankruptcy, none of the individuals are currently employed by Plaintiff and that two of the individuals own 100% of the stock of Plaintiff. Interrogatory No. 41 asks Plaintiff to state the amount of interest held by "You" in AltEn, LLC, AltEnergy Holding, LLC or AltEn Opportunity, I, LP. Plaintiff responded, stating that it owns 30% of the stock of AltEn, LLC and that it does not own any of the stock of the other two entities.

In responding to the discovery requests, Plaintiff objected to PEI's definition of the terms "You" and "Your" as being overly broad. (Filing 125-2.) Plaintiff asserted that the definition was improper because it included legal entities and people who had nothing to do

with the Ethanol Plant and/or the Boiler System.  Therefore, in answering the interrogatories, Plaintiff construed the terms to mean "[P]laintiff and any of the related companies or legal entities that were involved in the Ethanol Plant and/or the Boiler System." (*Id.*)  PEI has not challenged Plaintiff's narrowing of the definition of "You" and "Your."  Rather, PEI claims that even using Plaintiff's definition, Plaintiff's responses to Interrogatory Nos. 39 through 42 are incomplete.  For instance, with respect to Interrogatory Nos. 39 and 41, PEI contends that Plaintiff's responses are deficient because Plaintiff did not disclose its ownership in the "related companies" involved in the Ethanol Plant or whether the "related companies" have an interest in other companies, such as AltEn, LLC or its member corporations.

One problem here is that it is unclear what Plaintiff included within the term "related companies" when responding to PEI's discovery requests.  Because PEI has not objected to Plaintiff's definition of the terms "You" and "Your," the Court will not attempt to construe the term "related companies" or assess whether Plaintiff provided all information consistent with its supplied definition.  Moreover, Plaintiff's apparent inclusion of only itself within the terms "You" and "Your" when answering these interrogatories is reasonable given the context and information sought through the requests.  Therefore, the Court finds that Plaintiff's responses to Interrogatory Nos. 39 and 41 are sufficient.  The Court does find, however, that Interrogatory No. 40 requires supplementation.  This interrogatory asks for things such as dates of employment, job titles and email addresses which were not provided. Although this information may be available from other sources, it would not be unduly burdensome for Plaintiff to provide it in response to this interrogatory. Therefore, Plaintiff shall supplement its response to Interrogatory No. 40 so as to include this missing information.

Interrogatory No. 42 asks Plaintiff to state the amount of interest held by its attorney in AltEn LLC, AltEnergy Holding, LLC and AltEn Opportunity I, LP.  Plaintiff objected claiming that any ownership interest that Plaintiff's counsel has in the named entities has no bearing on any issues in this case and that the interrogatory improperly seeks discovery from non-parties.  PEI maintains that it is entitled to a response because at least one of Plaintiff's attorneys, Phillip Rouse, has an interest in AltEn, LLC and is also on AltEn, LLC's board of directors.  The Court will not compel Plaintiff to respond to this interrogatory as it is unclear

how the amount of interest that Plaintiff's attorneys have in non-parties is relevant to any genuine issues in this suit.

Document Production Request No. 51 asks Plaintiff to produce its articles of incorporation and bylaws. Plaintiff shall provide this information as producing it would not be overly burdensome and this documentation could lead to the discovery of admissible evidence. Similarly, Document Production Request No. 52 asks that Plaintiff provide the articles of incorporation and bylaws for AltEn, LLC, AltEnergy Holdings, LLC and AltEn Opportunity, I, LP. If Plaintiff possesses or controls these materials, Plaintiff shall produce them. If Plaintiff does not have possession or control of these items, Plaintiff shall so notify PEI.

### F.    Information Pertaining to Plaintiff's Website

Interrogatory No. 46 seeks a host of information pertaining to Plaintiff's website, including information for every person who ever worked on the website and the dates of, and reasons for, any changes to the website. Document Request No. 62 seeks any and all documents authored by Plaintiff, its lawyers or its agents that were written to Plaintiff's website designer, contributors, server and/or host in 2011 or receipts from these individuals/entities for work completed on Plaintiff's website. Plaintiff objected to these requests, arguing that they are not reasonably calculated to lead to the discovery of admissible evidence. Like Plaintiff, the Court does not see the relevance of these requests to the issues involved in this case. PEI's motion to compel will be denied as to these discovery requests.

### G.    Attorney-Client Privilege and Work Product Doctrine.

Plaintiff has withheld information responsive to Interrogatory Nos. 30, 31, 44, 45 and 47, as well as Document Production Request Nos. 10, 11, 12 and 38, asserting the attorney client privilege and/or work product doctrine. The attorney client privilege shields from disclosure confidential communications made for the purpose of facilitating the rendition of legal services. Neb. Rev. Stat. § 27-503. A communication is confidential "if not intended to be disclosed to third persons other than those to who disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for

11

the transmission of the communication." *Id*. The work product doctrine is distinct from and broader than the attorney client privilege. *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977). It shields from disclosure documents and other tangible things that are prepared in anticipation of litigation by or for another party or its representative, including the party's consultants, insurers and agents. Fed. R. Civ. P. 26. "While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Janicker v. George Washington, Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982). The test for determining whether a document was prepared in anticipation of litigation is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (quotation and citation omitted).

Interrogatory Nos. 30 and 31 ask Plaintiff to disclose information regarding any employees, experts, consultants or other persons acting on Plaintiff's behalf who have examined the scene of the boiler explosion or the instrumentalities/equipment involved in the incident. Plaintiff contends that the information sought is privileged and, additionally, that the discovery requests are an improper attempt to circumvent the expert witness disclosure rules. PEI concedes that Plaintiff need not provide information regarding its consulting or testifying experts. Instead, it wants Plaintiff to disclose its employees who inspected the boilers before litigation was anticipated. This information is discoverable. Accordingly, Plaintiff shall supplement its responses to Interrogatory Nos. 30 and 31 so as to provide PEI with a list of individuals who inspected the boilers before litigation was anticipated. Plaintiff need not identify its experts or consultants. Plaintiff should supply the information requested by the sub-parts of Interrogatory No. 31 as appropriate per the confines explained above.

Plaintiff also refuses to answer Interrogatory No. 44, which asks Plaintiff to identify when it first contemplated filing suit against PEI, on the basis of the attorney client privilege and work product doctrine. Plaintiff contends that answering this interrogatory would necessarily reveal conversations between Plaintiff's management and their counsel. The Court believes that in response to this interrogatory, Plaintiff need not disclose any communications. Rather, it is sufficient to give PEI a rough estimate of when litigation was

contemplated.  Plaintiff shall supplement its response accordingly.

Interrogatory No. 45 requests that Plaintiff state how it endeavored to preserve and protect any potentially relevant documents or electronically stored data after it contemplated litigation.  In response to these interrogatory, Plaintiff stated that as soon as Plaintiff anticipated litigation, Plaintiff "took every reasonable step it legally could to collect and preserve all documents and electronic data that might reasonably be relevant to any claims and defenses that might be asserted." (Filing 125-2.)  The steps Plaintiff took or general procedure it used to preserve information in anticipation of this lawsuit is not privileged information. Plaintiff shall supplement its response to include more specificity.

Interrogatory No. 47 asks Plaintiff to list every legal matter for which one of the law firms of record in this case provided Plaintiff with legal services or representation, the scope of the work that the firm was to perform and the inclusive dates of representation.  PEI has not shown how this interrogatory is relevant to the issues involved in this case.  Moreover, this request most certainly encompasses privileged information.  Plaintiff's objection to this interrogatory is sustained.

Document Production Request No. 10 asks Plaintiff to produce copies of photographs, maps, drawings or illustrations taken by Plaintiff or its representatives that depict damage to the boilers.  Document Production Request No. 12 seeks the production of reports, investigations and correspondence pertaining to efforts to repair the damage to the boilers.  Document Production Request No. 11 seeks all accident reports, notes, correspondence, logbooks or other writings pertaining to the explosion that were authored by any law enforcement agency, governmental entity, expert or insurance company.  Plaintiff objected to each of these requests, asserting that they seek privileged documents and materials generated by retained or non-retained experts.  Subject to these objections, Plaintiff stated that any responsive, non-privileged documents have been or will be produced.  In response to these requests, Plaintiff need not produce materials generated by its experts or consultants. However, if Plaintiff has not done so, it must provide PEI with a privilege log, listing all documents it is withholding as privileged.

13

Request for Production No. 38 asks Plaintiff to produce documents that discuss actions or efforts to shut down or "moth ball" the Boiler System in the Ethanol Plant when the bankruptcy proceeding was commenced.  Plaintiff has agreed to produce any non-privileged materials.  Plaintiff shall produce the documents requested in accordance with the provisions of this Order.  Again, documents withheld on the basis of privilege must be listed on a privilege log.

## H.    Other Issues Pertaining to Adequacy of Discovery Responses

PEI argues that Plaintiff should be ordered to provide more detailed information when answering interrogatories and when identifying or producing documents.  PEI has identified several areas of purported deficiencies in Plaintiff's responses.

First, PEI claims that Plaintiff's response to Interrogatory No. 1, which asks for the name, address, telephone number, employer's name and title of each person who assisted in responding to PEI's discovery requests, is incomplete.  In response to this interrogatory, Plaintiff provided the names of individuals that helped complete the answers, but did not provide the address, telephone number, employer's name or title of each person listed.  Because it would not be overly burdensome for Plaintiff to do so, Plaintiff shall supplement its response to include the omitted information.

Additionally, PEI claims that Plaintiff's responses to Interrogatory Nos. 3, 5, 8, 9, 10, 18, 19, 20, 22, 24, 25, 26, 29 and 33 contain legal conclusions which should be stricken as non-responsive and that Plaintiff should be required to supplement these interrogatories.  Having studied Plaintiff's responses, the Court concludes that Plaintiff's answers to these interrogatories are not objectionable on this basis.  Plaintiff's inclusion of facts mixed with its theory of the case does not make the responses evasive.[3]

Interrogatory No. 22 and Document Production Request No. 1 seek the names and addresses of all persons who were eyewitnesses to the boiler explosion at issue in this

---

[3] Plaintiff shall supplement its responses to these interrogatories, if necessary, as otherwise directed in this Order.

14

litigation and the identification and production of statements given by such witnesses.  PEI claims that Plaintiff's answers are incomplete and argues that Plaintiff failed to list at least three of its employees who heard the incident and who filled out a report to document their observations.  PEI further complains that Plaintiff failed to mention witness statements provided by three other employees that Plaintiff listed as witnesses.  The Court finds that Plaintiff properly responded to Interrogatory No. 22 by listing the individuals who viewed, rather than heard, the incident as this is a reasonable interpretation of the interrogatory.  However, Plaintiff's answer indicates that Plaintiff is aware of documents containing witness statements and states that "most, if not all" of the documents have been produced.  (Filing 125-2.) Plaintiff's response in this regard is confusing and seemingly incomplete.  If Plaintiff is in possession of additional non-privileged, responsive documents, they must be produced.  Likewise, non-privileged items responsive to Request No. 1 shall be provided.  Privileged materials must be listed on a privilege log.

Similarly, PEI maintains that Plaintiff failed to fully respond to Interrogatory Nos. 23, 24, 25, 29 and 32.  These interrogatories request the identities of individuals with knowledge that bears on (1) the issues in this case; (2) the physical damage caused by the incident at issue in this litigation; (3) the economic or financial damages caused by the incident; (4) the names of every person who claims to have seen or heard PEI's representatives make any statements related to the claims and/or defenses being asserted in this case and (5) the identities of Plaintiff's employees over the course of the project.  PEI asks that the Court order Plaintiff to supplement its responses to these interrogatories and, in support, points to supposedly responsive information which Plaintiff did not provide, despite the discovery requests.  Having reviewed Plaintiff's answers, it seems that, despite its objections and the breadth of the requests, Plaintiff has endeavored to provide the information reasonably sought and the Court does not find Plaintiff's answers purposefully evasive or incomplete.  However, to the extent, if any, that Plaintiff has not supplied information responsive to these interrogatories, it shall do so in accordance with the terms of this Order.  Again, however, Plaintiff has no obligation to identify consultants or experts.

## I.    Identification and Production of Documents

Throughout its responses to PEI's Document Production Requests, Plaintiff states that "responsive documents have been or will be produced." (Filing 125-3.) These responses are improper because it remains unclear whether all documents in Plaintiff's possession or control have been provided. Therefore, Plaintiff must supplement its responses so as to definitively state whether all documents have been produced. Any responsive documents that are being withheld on the basis of privilege must be listed on a privilege log.

PEI also takes issue with the form of Plaintiff's document production, arguing that Plaintiff provided no assistance in helping PEI to locate responsive documents. (Filing 125-3, Plaintiff's Responses to Document Production Request Nos. 1, 2, 4-36, 38-43, 45-50, 53-57, 59, 61 and 63.) According to PEI, Plaintiff has produced an enormous number of documents and the documents were not accompanied by an indices or other tool to guide PEI to the responsive materials. Plaintiff counters, maintaining that both parties have relied upon Fed. R. Civ. P. 34 by producing documents "as they are kept in the usual course of business" and that both parties have produced documents electronically, so either party can easily look for and find whatever documents they need.

The Court will not compel Plaintiff to re-organize its document production. Plaintiff represents that it has produced the documents as they are kept in the usual course of business and, it appears, that PEI has engaged in the same production tactics. Moreover, the nature of the documents here, third-party contracts, logs, photographs, etc . . ., are of such a nature that they can be identified just as easily by PEI as by Plaintiff.

Several of Plaintiff's interrogatory answers refer PEI to Plaintiff's document production for the information sought. (Filing 125-2, Plaintiff's Answers to Interrogatory Nos. 11, 12, 13, 16, 17, 18, 19, 22, 24, 29, 36 and 43.) PEI again complains that little, if any, guidance was provided to help PEI find the responsive documents. Additionally, PEI asserts that Plaintiff cannot simply refer to produced documents as a response to an interrogatory unless the documents supply all of the information sought by the interrogatory.

Federal Rule of Civil Procedure 33(d) permits a party to respond to interrogatories by producing documents. However, "[i]f a party responds to interrogatories pursuant to Rule 33(d), it must specify the documents from which the responses to the interrogatories can be derived in sufficient detail to enable the interrogating party to locate the documents as readily as the responding party could." *Graske v. Auto-Owners Ins. Co.*, 647 F.Supp.2d 1105, 1108 (D. Neb. 2009). "It is not sufficient for a responding party to simply direct the interrogating party to a mass of business records." *Id*.

The Court concludes that Plaintiff's answers to Interrogatory Nos. 11, 12, 13, 16, 17 and 24 properly refer to and identify seemingly responsive documents. The answers identify the documents relied upon (*e.g.*, contracts produced at the onset of discovery) with sufficient detail so as to enable PEI to locate the materials as readily as could Plaintiff. However, to the extent, if any, that the information sought through the interrogatories is not contained within the documents cited, the answers must be supplemented to provide the remainder of the requested information.

Plaintiff's responses to Interrogatory Nos. 18, 19, 22, 29, 36 and 43 require supplementation, however. The answers to these interrogatories are not clear as to whether all responsive documents have been produced and, particularly with respect to Interrogatory No. 36, the answer simply refers PEI to "documents that have been or will be produced." (Filing 125-2.) This response does not provide enough specificity to allow PEI to locate the documents.

Accordingly,

**IT IS ORDERED** that PEI's Motion to Compel (filing 123) is granted, in part, as set forth above. Plaintiff shall supplement its discovery responses and produce a privilege log within 45 days of this Order.

**DATED June 29, 2012.**

BY THE COURT:

S/ F.A. Gossett
**United States Magistrate Judge**

17